## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

FOX HAVEN OF FOXFIRE
CONDOMINIUM IV ASSOCIATION,
INC.,

      Plaintiff,

v.                        Case No:  2:13-cv-399-FtM-29CM

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

      Defendant.

## ORDER

Before the Court is Plaintiff Fox Haven of Foxfire Condominium IV Association, Inc.'s ("Fox Haven") Motion to Compel Defendant to Provide Better Answers to Plaintiff's First Set of Interrogatories (Doc. 33) and Defendant Nationwide Mutual Fire Insurance Company's ("Nationwide") Response (Doc. 40). Also before the Court is Fox Haven's Motion to Compel Defendant to Provide Better Responses to Plaintiff's First Request for Production (Doc. 34) and Nationwide's Response (Doc. 41).  Plaintiff insured's Amended Complaint alleges one count of Unfair Claims Practices pursuant to Fla. Stat. §§ 624.155, 626.9541 against Nationwide regarding its handling of Fox Haven's 2005 claim for damages caused by Hurricane Wilma.  Doc. 17.  Plaintiff alleges that Nationwide committed bad faith acts while handling its claim and that Nationwide commits bad faith acts as a general business practice.  *Id.* at ¶ 42.  Discovery closes on November 20, 2014, dispositive motions are due by December 17, 2014 and the case is set on the April 2015 trial term.

Doc. 49.   For the reasons set forth herein, both motions are granted in part and denied in part.

On August 5, 2013, Plaintiff served its First Set of Interrogatories (Doc. 33, Ex. A), consisting of four interrogatories.   On March 20, 2014, Nationwide served its Amended Notice of Service of Verified Responses.   Doc. 34, Ex. B.   Plaintiff also served its First Set of Requests for Production (Doc. 34, Ex. A) on August 5, 2013. Nationwide served its responses on September 24, 2013.   Doc. 34, Ex. B.   In August 2014, Plaintiff, believing that Nationwide's responses were deficient as to the four interrogatories and 16 requests for production, provided Nationwide with a draft motion to compel.[1]   Docs. 33 & 34, Ex. C.   Nationwide responded and the parties attempted to reach an agreement, but were unable to do so.   *Id.*

The Court notes that although Plaintiff was in possession of Defendant's responses to the requests for production on August 5, 2013, a meet and confer did not occur until *one year later*, and a motion to compel was not filed until September 17, 2014, on the eve of the discovery deadline,[2] leading the Court to believe that the information sought is not crucial to the presentation of Plaintiff's case.   Likewise, Nationwide served its amended responses to the interrogatories on March 20, 2014, yet Plaintiff did not meet and confer regarding the responses until five months later, in August 2014.   There is nothing in the briefs explaining Plaintiff's lack of diligence

---

[1] Plaintiff alleges that Nationwide failed and/or refused to respond, either in whole or in part, to interrogatories 1, 2, 3 and 4; and requests for production 1, 3, 4, 5, 6, 7, 8, 10, 12, 14, 15, 16, 17, 18, 19 and 20.

[2] At the time of filing the motions to compel, the discovery deadline was October 17, 2014.   Doc. 29.

in pursuing the discovery or available discovery remedies from the Court.   Plaintiff offers no explanation as to why it allowed 12 months to lapse before bringing a motion to compel the requests for production, and why it allowed 6 months to lapse before filing a motion to compel responses to *four* interrogatories.

The Court further notes that Nationwide's responses to most of the requests for production state that Nationwide has agreed to produce the documents requested by Plaintiff if a confidentiality agreement or protective order is entered.   Nationwide, however, has not moved for a protective order or shown that it has engaged in efforts to confer with Plaintiff regarding the substance of a confidentiality agreement. Thus, the request for entry of a protective order is denied.[3]

Also, in its responses to the motions to compel, in some instances Nationwide has simply agreed to amend its responses or produce the documents, making it seem as if the parties could have come to an agreement prior to filing the motions.   Thus, the parties' delay in moving discovery forward has necessitated that the Court rule on the discovery issues just as discovery is closing.   Therefore, documents will be produced for the first time after discovery has closed and on the eve of the dispositive motion deadline.   The Court informs the parties that it will not be inclined to find

---

[3] In the briefing, the parties set forth their arguments as to whether the entry of a protective order is proper in this case.   *See* Docs. 34 at 9-11; 41 at 4-5.   It is unclear to the Court why Defendant has not moved for the entry of a protective order before now. Defendant's responses to Plaintiff's First Set of Interrogatories were provided to Plaintiff in March 2014.   If, as set forth by Nationwide, a confidentiality order must be entered before it can sufficiently respond to the discovery requests, it should have worked with Plaintiff *at that time* to come to an agreement regarding the order.   The parties may still work among themselves to come to an agreement regarding confidentiality.

good cause to grant any future requests to extend the deadlines in this case as a result of the Court's rulings on these motions.

### First Set of Interrogatories

Interrogatory No. 1 requests all facts or circumstances that support any defenses to the Plaintiff's Complaint, along with the name, address and telephone number of any person with such knowledge.   With regard to Nationwide's first and third affirmative defenses, Nationwide has agreed to amend its response, therefore the motion to compel with respect to the first and third affirmative defenses is denied as moot.   With regard to Nationwide's second affirmative defense, Plaintiff argues that Nationwide identifies no facts or circumstances in support of its response. Instead, Plaintiff asserts that Nationwide's response refers Plaintiff to the claims file, which is overly vague and burdensome to sift through to find responsive documents. The Court finds that the reference to the claims file is a sufficient response. Therefore, the motion to compel with respect to the second affirmative defense is denied.

Lastly, Plaintiff requests the name, address and telephone number of any person with knowledge regarding the facts and circumstances supporting Nationwide's affirmative defenses.   Nationwide referred Plaintiff to 36 individuals listed in response to Interrogatory No. 2, which names individuals under the headings of "adjusters," "supervisor/manager" and "witnesses."   Doc. 33 at 8-11.   The Court agrees with Nationwide that the description of the witnesses' knowledge regarding the underlying claim is sufficient to put Plaintiff on notice as to which affirmative

defense the witness would have knowledge of.   With regard to the telephone numbers and addresses, the Court notes that some of the adjusters and supervisors/managers are listed as "c/o Antonio Morin, Esq.," who is Nationwide's counsel in this case.   The Court agrees that any current Nationwide employees must be contacted through counsel and Nationwide need not provide their contact information.   The Comment to Rule 4-4.2 of the Florida Rules of Professional Conduct provides that the rule prohibits communications by an attorney for one party with any person who is represented by counsel concerning the matter to which the communication relates.   With regard to the remaining individuals for which an address and telephone number were not provided, Defendant should provide this information to Plaintiff, if known.   Thus, the motion to compel Interrogatory No. 1 is granted in part.

With respect to Interrogatory Nos. 2 and 3, Nationwide has agreed to supplement its responses, which it should have done by now.   Therefore, the requests to compel are denied as moot.

In response to Interrogatory No. 4, Nationwide refers Plaintiff to its Best Claim Practices Manual ("Manual"), and Nationwide states it will produce if a protective order is entered, which the Court has denied.   Thus, Plaintiff's request to compel Interrogatory No. 4 is granted, and Nationwide is directed to supplement its response.

## First Requests for Production

With respect to Request No. 1, Nationwide has agreed to supplement its response.   Therefore, the request to compel is denied as moot.

Request No. 3 requests the entire litigation file from the underlying claim. Nationwide objects on work product and attorney-client privilege grounds, as set forth in its privilege log.   Doc. 34 at 47-53.   The Court notes that Nationwide withheld documents listed in its privilege log based upon relevance, work product and attorney-client privilege.   *Id.*   Nationwide asserts that the documents withheld on relevancy grounds consist of information related to invoices for legal work relating to Plaintiff's petition to appoint an umpire to preside over the appraisal of the underlying claim.   Plaintiff simply states that the information describing the fees and services rendered by Nationwide's attorney could lead to the discovery of evidence as to whether Nationwide litigated Plaintiff's claim in good faith.   Doc. 34 at 6.   The Court finds that Plaintiff has not set forth any further grounds to support its argument that the legal invoices are relevant to the instant litigation.   Thus, the request to compel the legal invoices is denied.

With regard to the documents withheld on the basis of work product and/or attorney-client privilege, the Florida Supreme Court held in *Allstate v. Ruiz*, 899 So.2d 1121, 1129-30 (Fla. 2005), that work product from the underlying proceeding in a first-party bad faith action brought pursuant to Fla. Stat. § 324.155, is discoverable.   899 So.2d at 1122, 1129-30.   In *Genovese v. Provident Life and Accident Ins. Co.*, the Florida Supreme Court addressed the issue of whether its

holding in *Ruiz* also applied to attorney-client privileged communications in the first-party bad faith context.   74 So.3d 1064, 1066 (Fla. 2011).   In *Genovese*, the court held that "[b]ecause of the uniqueness of the attorney-client privilege, we answer the certified question in the negative and hold that attorney-client privileged communications are not discoverable in a first-party action."   *Id.*   The court noted, "when an insured party brings a bad faith claim against its insurer, the insured may not discover those privileged communications that occurred between the insurer and its counsel during the underlying action."   *Id.* at 1068.

Thus, in this case, the documents withheld by Nationwide on the basis of work product must be produced.   With regard to the attorney-client privilege, Florida law governs the application of the attorney-client privilege in diversity actions such as this that raise no federal question.   *Palmer v. Westfield Ins. Co.*, 2006 WL 2612168, at *2 (M.D. Fla. June 30, 2006).   The attorney-client privilege protects communications between a client and attorney made in confidence for the purpose of securing legal advice or assistance.   *S.E.C. v. Dowdell*, 2006 WL 3876294, at *3 (M.D. Fla. May 15, 2006) (citing *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1414 (11th Cir. 1994)).   The attorney-client privilege only extends to confidential communications whose primary or predominate purpose is to seek or provide legal advice or assistance.   *See, e.g., Preferred Care Partners Holding Corp. v. Humana, Inc.*, 258 F.R.D. 684 (S.D. Fla. 2009) (privilege does not extend to communications with an attorney related solely to business advice).

Thus, the documents withheld in this case on the basis of attorney-client privilege should involve situations where an insurer hired the attorney to render legal advice in connection with the underlying claim.   In *Genovese*, the court noted that where an insurer hires an attorney to investigate the underlying claim, but the attorney does not render legal advice, those communications would not be protected by the attorney-client privilege.   74 So.3d at 1068.

Upon review of Nationwide's privilege log, the Court notes that most of the entries are communications between Nationwide and its attorneys regarding Defendant's response to Plaintiff's Civil Remedy Notice, which was served on Nationwide on or about December 30, 2010.   The entries also relate to the appointment of an umpire and the state court's orders and the status of that litigation, all of which the Court finds would be protected by the attorney-client privilege pursuant to *Genovese*.   However, three documents relate to communications involving coverage under the policy, which is business, rather than legal advice.   Therefore, the Court directs Nationwide to produce these three documents.[4]   All other documents listed on Nationwide's privilege log as attorney-client privilege need not be produced.

With regard to Request No. 4, the Court finds that the requested information is relevant, but agrees that the relevant time period for purposes of these requests for production (with the exception of Request Nos. 7 and 8, discussed *infra*) should be October 28, 2005 to December 31, 2011, as these would be the standards used by

---

[4] The documents are NW01042, NW01045 and NW01046.   Doc. 34 at 48.

Nationwide when adjusting Plaintiff's claim in this case ("relevant time period"). Further, the Court finds it is appropriate to limit the request to the standards used for Florida commercial property claims, as Plaintiff has not shown that such a broad request for materials used in all other states would be relevant to Plaintiff's bad faith allegations regarding Nationwide's business practices adjusting claims in Florida. Thus, Plaintiff's request to compel Request No. 4 is granted in part.  Likewise, the Court finds that Request Nos. 5, 6, 10, 14 and 19 seek relevant information, but limited to the relevant time period, and to materials used for Florida commercial property claims.

Request No. 7 seeks the entire personnel files of Nationwide's employees who handled/supervised any of Plaintiff's underlying claim, with redactions for personal medical, salary or presumably confidential material.  Plaintiff seeks this information to show that Nationwide's adjusters undertook the adjustment of Plaintiff's claim when they were not competent or knowledgeable to do so. Nationwide objects to this request as overbroad in both subject and temporal scope and on confidentiality grounds.

The Court finds that the request is overbroad, and only certain information in the personnel files such as disciplinary information and performance reviews[5] would be relevant, beginning when the employee was hired and trained until the appraisal award was paid in December 2011.  Plaintiff, however, has not shown that any information other than this included in the personnel file would be relevant.

---

[5] Performance reviews were requested in Request No. 8.

Further, any information that Plaintiff seeks in support of its claims should have been obtained through the course of discovery by other means, such as the depositions of the employees.   Thus, to the extent this information has already been obtained, Defendant should produce any disciplinary information and performance reviews.

Plaintiff also has not shown that the personnel file of every employee who "handled" Plaintiff's underlying claim would be relevant.   This could encompass any employee who even tangentially touched the claims file.   Thus, the Court will limit production to the personnel files for the adjusters and supervisors who worked on Nationwide's underlying claim that is the subject to this litigation, with appropriate redactions, limited to disciplinary information and performance reviews.   *See Pepperwood of Naples Condo Ass'n, Inc. v. Nationwide*, 2011 WL 4596060, at *11 (M.D. Fla. Oct. 3, 2011) (limiting production in a similar request).   The production is limited to when the employee was hired to December 31, 2011.   Thus, Plaintiff's request to compel Request Nos. 7 and 8 is granted in part.

With regard to Request No. 12, Nationwide states that it does not have any documents in its possession bearing the name "Dashboard reports," "RAPP," "RAPP reports," or "ACRS Reports" during the relevant time period of Plaintiff's underlying claim.   Doc. 41 at 9-10.   Thus, the motion to compel these documents is denied. With regard to "MBO" documents, Nationwide states that it does not maintain MBOs by that name, but does use performance objectives which are measures for the evaluating its employees, and are maintained as part of personnel files/evaluations for its employees.   *Id.* at 11.   As discussed *supra*, with respect to Request Nos. 7 and

8, Nationwide is not required to produce entire personnel files, and Plaintiff could have obtained any information regarding performance objective by other discovery means by now.   Thus, the motion to compel "MBO" documents is denied.   With regard to ACE documents, the Court has finds that such documents are relevant and should be produced. [6]   With regard to average claims payments documents, Nationwide states that it maintains such documents for non-commercial property claims, which are irrelevant to the instant case, and does not maintain average paid claim documents with respect to Florida commercial property claims, like the property at issue in this case.   The Court agrees that such documents need not be produced.

Plaintiff argues that Nationwide's response does not address the portion of Plaintiff's request regarding documents offered during meetings which relate to bonus/employee incentive programs, negotiating claims, property claims handling and bad/good faith claims handling.   The Court agrees that Nationwide has not responded to these portions and that such documents would be relevant.   Thus, Nationwide is directed to supplement its response to these portions of the request. The time period is limited to the relevant time period, and to Florida commercial property.   Thus, the motion to compel Request No. 12 is granted in part.

Nationwide states that it does not have any documents in its possession bearing the name "Dashboard Reports" in response to Request No. 16.   Doc. 41 at 9.

---

[6] Thus, Request Nos. 15 and 20 are also granted, as it requests ACE materials, within the parameters as set forth by the Court at *supra*, Request No. 4.

Thus, motion to compel Request No. 16 is denied.   Likewise, Nationwide states that it does not have any documents bearing the names "RAPP" or "ACRS" in its possession during the relevant time period for Plaintiff's underlying claim in response to Request Nos. 17 and 18.   Doc. 41 at 9.   The Court finds that Nationwide has adequately responded to the requests, as drafted by the Plaintiff.   Thus, the motion to compel Request Nos. 17 and 18 is denied.

ACCORDINGLY, it is hereby

**ORDERED:**

1.   Plaintiff's Motion to Compel Defendant to Provide Better Answers to Plaintiff's First Set of Interrogatories (Doc. 33) is **GRANTED in part and DENIED in part**.   Plaintiff's request to compel Interrogatory No. 1 is **GRANTED in part**. Plaintiff's request to compel Interrogatory Nos. 2 and 3 is **DENIED as moot**. Plaintiff's request to compel Interrogatory No. 4 is **GRANTED**.   Nationwide shall supplement its response to Interrogatory No. 4 by **November 20, 2014**.

2.   Plaintiff's Motion to Compel Defendant to Provide Better Responses to Plaintiff's First Request for Production (Doc. 34) is **GRANTED in part and DENIED in part**.   Plaintiff's request to compel Request Nos. 3, 4, 5, 6, 7, 8, 10, 12, 14, 15, 19 and 20 is **GRANTED in part**.   Nationwide shall produce the documents by **November 20, 2014**.   Plaintiff's request to compel Request Nos. 1, 16, 17 and 18 is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida on this 14th day of November, 2014.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record