UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FOX HAVEN OF FOXFIRE
CONDOMINIUM IV ASSOCIATION,
INC.,

    Plaintiff,

v.                                        Case No: 2:13-cv-399-FtM-29CM

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,

    Defendant.

_____

**OPINION AND ORDER**

    This matter comes before the Court on Defendant's Motion for Summary Judgment (Doc. #60) filed on December 17, 2014. Plaintiff filed a Response (Doc. #66) on January 9, 2015. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

    Plaintiff Fox Haven of Foxfire Condominium IV Association, Inc.'s (Fox Haven) Amended Complaint (Doc. #17) alleges one count of unfair claims practices against Defendant Nationwide Mutual Fire Insurance Company (Nationwide) regarding Nationwide's handling of Fox Haven's claim for damages caused by Hurricane Wilma. What follows is a brief summary of the undisputed facts.

    In October 2005, Fox Haven suffered damages to its condominium building as a result of Hurricane Wilma. Fox Haven contacted Nationwide and requested compensation for the damage pursuant to

the Fox Haven's insurance policy. In December 2005, a Nationwide adjuster and an engineer retained by Nationwide inspected Fox Haven's property. Based on those inspections, Nationwide concluded that it would cost approximately $87,000 to repair Fox Haven's building damage and approximately $31,000 to repair damage to appurtenant structures such as car ports. However, Nationwide concluded that only 20% of the building damage was a result of Hurricane Wilma. After making that adjustment and accounting for deductibles and depreciation, Nationwide concluded that Fox Haven was owed a cash payment of $23,579.25. Nationwide issued a check for that amount on March 10, 2006.

Fox Haven disagreed with Nationwide's assessment of their claim. In August 2008, Fox Haven invoked the insurance policy's appraisal provision, which provides that disputes are resolved by a three-person appraisal panel consisting of each party's hired appraiser and a neutral umpire. In December 2010, while the appraisal process was ongoing, Fox Haven filed a Civil Remedy Notice (CRN) with Florida's Department of Financial Services (DFS) alleging that Nationwide was not attempting to settle Fox Haven's claim in good faith. Nationwide did not make a settlement offer in response to the CRN. On August 4, 2011, the appraisal panel issued an appraisal award totaling $381,461.12. Nationwide compensated Fox Haven for the difference between its initial payment and the appraisal award.

Fox Haven then filed suit against Nationwide alleging that Nationwide violated Fla. Stat. § 624.155 and §626.9541 by failing to settle its claim in good faith. Fox Haven seeks to recover the actual damages it suffered as a result of Nationwide's alleged bad faith as well as punitive damages for Nationwide's alleged history of engaging in similar conduct. Nationwide now moves for summary judgment, arguing (1) that Fox Haven's claim is barred because Fox Haven's CRN was legally insufficient; (2) that Fox Haven cannot rely on Nationwide's conduct after the CRN's 60-day cure period; (3) that the undisputed facts demonstrate that Nationwide acted in good faith; and (4) that there is no evidence in the record supporting Fox Haven's claim for punitive damages.

## II.

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." Baby Buddies, Inc. v. Toys "R" Us, Inc., 611 F.3d 1308, 1314 (11th Cir. 2010). A fact is "material" if it may affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A court must decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-sided that one party must prevail as a matter of law.'" Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Anderson, 477 U.S. at 251).

In ruling on a motion for summary judgment, the Court views all evidence and draws all reasonable inferences in favor of the non-moving party. Scott v. Harris, 550 U.S. 372, 380 (2007); Tana v. Dantanna's, 611 F.3d 767, 772 (11th Cir. 2010). However, "if reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment." St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999) (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)(finding summary judgment "may be inappropriate where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from these facts")). "If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment." Allen v. Bd. of Pub. Educ., 495 F.3d 1306, 1315 (11th Cir. 2007).

**III.**

**A.  The Content of Fox Haven's CRN**

An insured may bring a civil action against an insurer for "[n]ot attempting in good faith to settle claims when, under all

4

the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." Fla. Stat. § 624.155(1)(b)(1). As a prerequisite to filing suit, the insured must first file a CRN with DFS and the insurer. Id. § 624.155(3)(b). The CRN must state (1) the statutory provision allegedly violated; (2) the facts and circumstances giving rise to the violation; (3) the names of any individuals involved; (4) any relevant policy language; and (5) a statement that the insured is pursuing a civil remedy under Fla. Stat. §624. Id. The purpose of the CRN is to explain "the facts and circumstances surrounding the insurer's bad faith in order to allow the insurer to remedy the problem," thereby providing "the insurer one last chance to settle a claim with its insured and avoid unnecessary bad faith litigation." Bell v. Geico Gen. Ins. Co., 489 F. App'x 428, 432 (11th Cir. 2012) (quotations omitted).

Nationwide argues that Fox Haven's CRN was invalid because it failed to provide Nationwide with the information required by Fla. Stat. § 624.155(3)(b). Specifically, Nationwide contends that the CRN (1) had inadequate factual support; (2) failed to identify relevant policy language; and (3) referenced a claim for "loss of use" despite the fact that Fox Haven had not previously sought such coverage. Because the filing of an adequate CRN is a prerequisite for filing suit, if Fox Haven's CRN was inadequate its claim must be dismissed.

**(1) CRN Facts:**

As explained above, a CRN must set forth the "facts and circumstances giving rise to the violation." Fla. Stat. § 624.155(3)(b). Nationwide argues that Fox Haven did not provide sufficient detail. The Court disagrees.

As an initial matter, DFS accepted Fox Haven's CRN without returning it for "lack of specificity" as the statute provides for facially noncompliant filings. Fla. Stat. § 624.155(3)(c). Turning to the CRN itself, the form provides the prompt: "To enable the insurer to investigate and resolve your claim, describe the facts and circumstances giving rise to the insurer's violation as you understand them at this time." (Doc. #17-7.) In response, Fox Haven stated that it "suffered damages as a result of a hurricane" and "timely reported the loss" to Nationwide. (Id.) Fox Haven listed the relevant policy and claim numbers and explained that it disagreed with Nationwide's assessment of the claim and had invoked the insurance policy's appraisal provision. (Id.) Fox Haven further stated that Nationwide failed to promptly and properly investigate the claim, failed to act in due diligence and good faith to resolve the claim, looked "for ways to deny coverage, pay less, delay payment and otherwise 'low ball' or 'stonewall' [the] claim," and placed Nationwide's financial interests before that of Fox Haven. (Id.) The Court concludes that these allegations adequately set forth the "facts and

6

circumstances giving rise to the violation" and therefore satisfy the requirements of § 625.155(3)(b). See Porcelli v. OneBeacon Ins. Co., 635 F. Supp. 2d 1312, 1318 (M.D. Fla. 2008).

**(2) Relevant Policy Language:**

A CRN must also reference relevant policy language "if any." Fla. Stat. § 624.155(3)(b)(4). Fox Haven's CRN referenced its policy with Nationwide as a whole, but did not cite any specific sections or language. (Doc. #17-7.) Nationwide argues that Fox Haven's omission renders the CRN inadequate. The Court disagrees. "An action for bad faith is extra contractual in nature and relates to the duties of an insurer as defined by statute, not the express terms of the contract." Canales v. Am. Sec. Ins. Co., No. 11-CV-789, 2011 WL 5358753, at *5 (M.D. Fla. Nov. 7, 2011) (quotation omitted). Thus, insureds filing CRNs premised upon an insurer's alleged bad faith are "not required to reference specific, relevant language from the Policy." Id. at *5.

**(3) Scope of Damages:**

Lastly, Nationwide notes that the CRN incorrectly described the damage suffered by Fox Haven. The CRN states that that Fox Haven's claim to Nationwide "include[d] damage to the structure and loss of use." (Doc. #17-7.) Fox Haven concedes that it never sought coverage for loss of use and cannot explain why the CRN referenced damages for loss of use. (Doc. #60-7, pp. 74-75.) Thus, it is undisputed that the CRN was not perfectly accurate.

7

Nevertheless, reading the CRN as a whole, the Court concludes that Fox Haven's mistaken reference to a claim for "loss of use" did not prevent Nationwide from ascertaining the factual basis for Fox Haven's claim, nor did it deny Nationwide a meaningful opportunity to cure the alleged bad faith.  Bell, 489 F. App'x at 432.

The CRN referenced the claim number in question and alleged that Nationwide had refused to settle the claim in good faith by, *inter alia*, providing "low ball" settlement offers and stonewalling the appraisal process.  This was sufficient to provide Nationwide with "the facts and circumstances giving rise to the violation," Fla. Stat. § 624.155(3)(b), and allowed Nationwide to "evaluate a claim based upon proof of loss required by the policy and its expertise" and make a good faith determination of whether additional amounts were owed under the policy, Vest v. Travelers Ins. Co._,_ 753 So.2d 1270, 1275-76 (Fla. 2000).  Accordingly, the Court concludes that Fox Haven's minor error does not invalidate the CRN.

In sum, the Court concludes that Fox Haven's CRN substantially satisfied the requirements of Fla. Stat. § 624.155(3)(b) and, therefore, Nationwide's motion for summary judgment based upon the content of the CRN is denied.

**B.   The Timing of Fox Haven's CRN**

Fox Haven argues that Nationwide acted in bad faith by, *inter alia*, failing to pay the appraisal award in its entirety once it

8

was issued by the appraisal panel.  Though Nationwide ultimately paid the award in full, Fox Haven alleges that Nationwide's delay in doing so constitutes bad faith.  Nationwide argues that it is entitled to summary judgment on this theory of bad faith because the appraisal award was issued long after the expiration of the CRN's 60-day cure period.  The Court agrees.

After receiving the CRN, "[t]he insurer then has sixty days in which to respond and, if payment is owed on the contract, to cure the claimed bad faith by paying the benefits owed on the insurance contract." Heritage Corp. v. Nat'l Union Fire Ins. Co., 255 F. App'x 478, 481 (11th Cir. 2007) (quoting Vest, 753 So.2d at 1275).  If the insurer does not pay what is owed under the policy, the insured may file suit.  However, the insured's claim does not accrue until "there has been a determination of the existence of liability on the part of the insurer." Heritage, 255 F. App'x at 481.

Nevertheless, nothing "prevents the insured from sending the [CRN] before there is a determination of liability or damages.  Nor is the insurer's appropriate response to that notice dependent on such a determination." Vest, 753 So. 2d at 1275.  Instead, after receiving a CRN, the insurer "must evaluate a claim based upon proof of loss required by the policy and its expertise in advance of a determination by a court or arbitration." Id. at 1275-76.  If an insurer does not settle the policy claim in

9

response to the CRN, and it is later determined that the insurer failed to pay all the benefits owed under the policy, the insurer can be sued for failing to act in good faith. Id. This is true even if the insurer promptly paid the additional benefits after an appraisal panel determined what was owed. Id.

While an insured may rely on a post-CRN determination of liability when filing a lawsuit alleging bad faith, Vest, 753 So. 2d at 1275-76, an insured cannot establish bad faith via insurer conduct that occurred after the CRN's 60-day cure period. The purpose of a CRN is to provide the insurer with an opportunity to correct the circumstances giving rise to the bad faith allegation. Bell, 489 F. App'x at 432. Thus, any action or inaction that took place after the 60-day cure period cannot support an insured's bad faith claim, because it is impossible for an insurer to remedy bad faith that has not yet occurred. Id.; see also Alexander v. Gov't Employees Ins. Co., No. 10-CV-287, 2012 WL 5382051, at *3 (M.D. Fla. Nov. 1, 2012) (excluding as irrelevant evidence of insurer's actions taken after the CRN's 60-day cure period).

The DFS accepted the CRN on December 30, 2010 and Nationwide's cure period expired 60 days later on February 28, 2011. Accordingly, Fox Haven cannot rely on any subsequent actions by Nationwide in support of its bad faith claim. The appraisal award was not issued until August 4, 2011. Therefore, Fox Haven cannot rely on Nationwide's payment delay in support of its bad faith

claim and summary judgment is granted in favor of Nationwide as to this portion of the claim.

**C. Fox Haven's Allegations of Bad Faith**

There is no precise definition of "good faith" in the context of settling insurance claims. Hogan v. Provident Life & Acc. Ins. Co., 665 F. Supp. 2d 1273, 1281 (M.D. Fla. 2009). Instead, the trier of fact must assess the totality of the circumstances to determine whether the insurer has satisfied its duty to "to timely evaluate and pay benefits owed on the insurance policy." Vest, 753 So. 2d at 1275.

In support of its bad faith claim, Fox Haven primarily relies on the large discrepancy between Nationwide's damage calculation (roughly $64,000) and the appraisal panel's final damage calculation (roughly $381,000). The discrepancy is largely attributable to the cost of replacing Fox Haven's roof. In response to Fox Haven's initial policy claim, Nationwide determined that replacing the entire roof was unnecessary. The appraisal panel disagreed and its calculation of Fox Haven's damages included a roof replacement. According to Fox Haven's insurance adjuster, the need for a roof replacement "was always obvious." (Doc. #68-1. ¶ 6.) However, Nationwide never offered to replace the roof, nor did it attempt to negotiate with Fox Haven regarding roof replacement after Fox Haven provided Nationwide with its adjuster's report. (Id. at ¶¶ 7-8.)

Nationwide concedes that its damage calculation was much smaller than the appraisal panel's. However, Nationwide argues that such evidence is insufficient to demonstrate bad faith. In support, Nationwide relies upon 316, Inc. v. Maryland Cas. Co., 625 F. Supp. 2d 1187 (N.D. Fla. 2008). Similar to Fox Haven, the plaintiff in 316 argued that the large discrepancy between the insurer's offer and the appraisal award demonstrated that the insurer acted in bad faith. The court disagreed and granted summary judgment in favor of the insurer. Id. According to Nationwide, 316 stands for the proposition that when the insurer follows the appraisal process as set forth in the policy and promptly pays the agreed upon appraisal amount, the insurer will not be held as having acted in bad faith. (Doc. #60, p. 18.) However, the ruling in 316 is not that broad, and is not binding in any event. The court's conclusion that the insurer had acted in good faith was based primarily on the fact that the insurer "paid almost sixty-percent of the final award in advance of the appraisal process." 316, 625 F. Supp. 2d at 1193. Additionally, the 316 court noted that the insurance claim at issue was complicated, which explained the parties' differing damage calculations. Id.

That is not the case here. Nationwide's pre-appraisal calculation of Fox Haven's loss totaled $64,359.13 on an Actual Cash Value (ACV) basis. (Doc. #60, pp. 2-3.) Nationwide made its

12

sole pre-appraisal payment to Fox Haven based upon that calculation and made no subsequent settlement offers. (Id. at 8.) The appraisal panel calculated the actual ACV of Fox Haven's loss as $381,461.12. (Id. at 10.) Thus, while the insurer in 316 paid 60% of the award up front, here Nationwide paid less than 20%. Additionally, while it was undisputed that the claim in 316 was complicated, a jury here could choose to credit Fox Haven's adjuster's testimony that the need for a roof replacement was "obvious." (Doc. #68-1. ¶ 6.) Based upon these facts, and drawing all reasonable inferences in favor of Fox Haven, the Court concludes that a jury could reasonably conclude that Nationwide acted in bad faith by intentionally "low balling" its calculation of Nationwide's damages.

**D. Punitive Damages**

In a bad faith cause of action, a plaintiff may not recover punitive damages "unless the acts giving rise to the violation occur with such frequency as to indicate a general business practice . . . ." Fla. Stat. § 624.155(5). To prove the existence of a general business practice, the plaintiff must demonstrate "other acts" of bad faith by the insurer that are unrelated to the insurance claim at issue in the underlying action. Jablonski v. St. Paul Fire & Marine Ins. Co., No. 07-CV-00386, 2010 WL 1417063, at *5 (M.D. Fla. Apr. 7, 2010). Typically, a plaintiff establishes a general business practice by demonstrating that the insurer also

13

acted in bade faith when evaluating numerous other claims. Hogan, 665 F. Supp. 2d at 1289 (insured adequately pled claim for punitive damages by alleging that the insurer committed similar acts of bad faith in more than 4,000 other claims).

Here, Fox Haven argues that the following evidence would allow a reasonable jury to conclude that Nationwide knowingly "low balled" property insurance claims as part of its general business practice: (1) a list of hundreds of CRNs filed against Nationwide alleging inadequate settlement offers (Doc. #67-1, pp. 5-18); (2) testimony from Nationwide's corporate representative that Nationwide handled Fox Haven's claim in accordance with its standardized best practices (Doc. #69-1, p. 53); and (3) an affidavit from Kelly Kubiak (Kubiak), Fox Haven's counsel, stating that she interviewed former Nationwide employees who told her that Nationwide used financial incentives to encourage its adjusters to "low ball" claims (Doc. #67-1, ¶ 18).

As an initial matter, Fox Haven cannot rely on Kubiak's second-hand account of an interview she had with former Nationwide employees. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Kubiak has no personal knowledge of the way Nationwide compensates its employees. While the former Nationwide

14

employees presumably have such knowledge, Fox Haven has not provided their direct testimony. Accordingly, the Court will not consider this portion of Kubiak's affidavit. What remains is the fact that Nationwide has received numerous CRNs complaining of inadequate settlement offers and the testimony of Nationwide's corporate representative that Nationwide evaluated Fox Haven's claim in accordance with its standard practices.

Drawing all reasonable inferences in favor of Fox Haven, the Court concludes that this evidence could not lead a reasonable jury to conclude that Nationwide knowingly "low balled" property insurance claims as part of their general business practice. The mere fact that other insureds have filed CRNs similar to Fox Haven's is not evidence that Nationwide assessed those other claims in bad faith. It is merely evidence that other insureds were not satisfied with Nationwide's initial assessment of the claim. Thus, Fox Haven has not provided any evidence of other acts of bad faith committed by Nationwide. Accordingly, Nationwide is entitled to summary judgment on Fox Haven's demand for punitive damages.

Accordingly, it is now

**ORDERED:**

Defendant's Motion for Summary Judgment (Doc. #60) is **GRANTED IN PART and DENIED IN PART**. Summary judgment is granted in favor of Defendant as to that portion of Plaintiff's claim based upon Defendant's actions after February 28, 2011. Summary judgment is

15

also granted in favor of Defendant as to Plaintiff's demand for punitive damages. The motion is otherwise denied.

**DONE AND ORDERED** at Fort Myers, Florida, this __17th__ day of February, 2015.

                                      JOHN E. STEELE
                                      UNITED STATES DISTRICT JUDGE

Copies: Counsel of record